IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**KIRK PERRY and<br>JAMAREA GRANT,**<br><br>Defendants. | CRIMINAL NO. _____<br><br>GRAND JURY ORIGINAL<br><br>VIOLATIONS:<br><br>**Count 1: 18 U.S.C. § 1349<br>(Conspiracy)**<br><br>**Counts 2 through 5: 18 U.S.C. §§ 1343,<br>1346, 2 (Wire Fraud and Aiding and<br>Abetting)**<br><br>**FORFEITURE ALLEGATION:**<br>18 U.S.C. § 98l(a)(l)(C);<br>21 U.S.C. § 853(p); and<br>28 U.S.C. § 246l(c) |

Case: 1:24-cr-00223
Assigned to: Judge Kollar-Kotelly, Colleen
Assign Date: 5/9/2024
Description: INDICTMENT (B)

**INDICTMENT**

The Grand Jury for the District of Columbia charges that, at all times material to this Indictment, on or about the dates and times stated herein:

**Background**

*Relevant Individuals and Entities*

1.  Defendant KIRK PERRY was a resident of the State of Ohio. PERRY was a Supervisory Equal Opportunity Specialist who served as Program Director for the Employment Adjudication Division ("EAD") of the Office of the Assistant Secretary for Civil Rights ("OASCR") within the United States Department of Agriculture ("USDA"). At all relevant times, PERRY's duty location was the District of Columbia. Until March 2020, PERRY commuted weekly from Ohio to the District of Columbia. Beginning in March 2020, PERRY began regularly teleworking from Ohio.

2. Defendant JAMAREA GRANT was a resident of the State of Ohio. GRANT was PERRY's nephew.

3. OASCR was an office within the USDA located in the District of Columbia. It was responsible for ensuring USDA's compliance with applicable laws, regulations, and policies pertaining to civil rights and equitable treatment for USDA customers and employees. OASCR's Employment Directorate reviewed and evaluated Equal Employment Opportunity ("EEO") complaints filed against USDA agencies and offices. The Employment Directorate had three divisions — the Employment Complaints Division ("ECD"), the Employment Investigations Division ("EID"), and EAD, where PERRY worked.

4. ECD assessed formal EEO complaints for acceptance or dismissal. Accepted complaints were referred to EID for investigation.

5. EID investigators obtained documentary and testimonial evidence to evaluate the complaints. EID was also responsible for generating Reports of Investigation ("ROIs") for EAD documenting complaints accepted for investigation by ECD. ROIs were reviewed by EID prior to release to ensure consistency with the relevant civil rights and other applicable laws.

6. EAD reviewed the investigative findings of EID and issued corresponding Final Agency Decisions ("FADs") on behalf of the USDA. EAD also monitored settlements, ensured compliance by applicable parties, and addressed matters remanded for agency review by the Equal Employment Opportunity Commission ("EEOC").

7. OASCR contracted third parties to hire personnel to perform EEO services on its behalf, including by supplementing the functions of EID and EAD.

*The Company 1 and Company 2 Contracts with OASCR for EEO Services*

8. Company 1 was a Maryland-based company. From August 2015 through March 2018, Company 1 received a contract from OASCR to provide EEO services.

9. Company 2 was a Virginia-based company. From March 2018 to at least September 2022, Company 2 replaced Company 1 as the vendor with a contract from OASCR to provide EEO services.

10. As part of the EEO services they were contracted to provide, Company 1 and Company 2 were to provide contract employees known as Equal Opportunity Specialists ("EOSs") and Equal Opportunity Assistants ("EOAs") to supplement EID by reviewing ROIs, assist EAD with writing FADs, and perform other duties as specified. The employees' time was billed by the hour, or, eventually, by the number of FADs completed.

11. PERRY was designated by OASCR as its Technical Point of Contact ("TPOC") and/or Contracting Officer's Representative ("COR") for both the Company 1 and Company 2 contracts.

12. As TPOC / COR on the Company 1 and Company 2 contracts, PERRY monitored the contracting firms' performance under the OASCR contracts, exercised daily oversight of the contract employees, and verified contract employee timesheets and hours worked or FADs completed.

*Fraudulent Billing of GRANT's Time under the Company 1 and Company 2 Contracts*

13. From August 2015 through March 2018, GRANT was employed as an EOA for Company 1 under the OASCR contract. When Company 2 replaced Company 1 as the contract vendor in March 2018, GRANT's employment with Company 1 rolled over to Company 2. From March 2018 through November 2022, GRANT was employed as an EOA for Company 2

under the OASCR contract. Prior to being hired by Company 1, GRANT had no background, education, or experience in EEO-related matters.

14. PERRY referred GRANT to Company 1 and was instrumental in his being hired as an EOA. When PERRY referred GRANT to Company 1, PERRY knew that GRANT had no background, education, or experience in EEO-related matters.

15. Company 1 and Company 2 hired GRANT to provide equal opportunity review and audit services to OASCR. As an EOA, GRANT was required to provide administrative support, akin to a paralegal, to the EOSs who, among other things, reviewed ROIs for legal sufficiency and drafted FADs.

16. The Company 1 and Company 2 contracts required all contract employees to work onsite at USDA's offices located in the District of Columbia. Contract employees were not allowed to remove any materials from the USDA offices, including case files or their work product. Access to all entry points for the USDA offices located in the District of Columbia were controlled via card reader access. GRANT was never issued an access card, and there is no record that he ever accessed any USDA building in the District of Columbia or elsewhere.

17. All Company 1 and Company 2 contract work for OASCR was to be performed using government-provided equipment and accounts. OASCR provided office equipment for the contractors including phones, printers, and computers configured and approved for use on the USDA network. GRANT was never issued any office equipment by OASCR, Company 1, or Company 2, never had a USDA or OASCR email address or user identification to access any government system, and was never listed in any USDA or OASCR phone directory.

18. From August 2015 through March 2018, while working as an EOA for Company 1, GRANT reported directly to PERRY. During that time, GRANT performed little to none of

the work required under the OASCR contract, and falsified his hours worked and/or the number of FADs reviewed.

19. From March 2018 to November 2022, while working as an EOA for Company 2, GRANT reported directly to PERRY. During that time, GRANT performed little to none of the work required under the OASCR contract, and falsified his hours worked and/or the number of FADs reviewed.

20. From August 2015 through March 2018, Company 1 paid GRANT approximately $195,480 under its contract with OASCR.

21. From March 2018 through November 2022, Company 2 paid GRANT approximately $203,839 under its contract with OASCR.

## COUNT ONE

### (Conspiracy to Commit Money, Property, and Honest Services Wire Fraud)

### The Conspiracy

22. Paragraphs 1 through 21 are hereby incorporated and realleged.

23. Beginning at least in or about August 2015, and continuing until in or about November 2022, in the District of Columbia and elsewhere, defendants,

**KIRK PERRY and JAMAREA GRANT,**

did knowingly conspire and agree with each other to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and concealment of fact, and to devise and intend to devise a scheme and artifice to defraud and deprive the United States of the honest services of PERRY, a public official, through bribes and kickbacks, in violation of Title 18, United States Code, Sections 1343 and 1346.

5

## Purpose of the Conspiracy

24. A purpose of the conspiracy was, among others, for the co-conspirators to enrich themselves by using false and fraudulent representations to cause the United States to pay money to Company 1 and Company 2, and for Company 1 and Company 2 to pay GRANT in turn, for work that GRANT did not perform, with the understanding that GRANT would kickback a portion of the fraud proceeds to PERRY. A further purpose of the conspiracy was for the co-conspirators to deprive the United States of the honest services of PERRY, through the payment of bribes and kickbacks from GRANT to PERRY.

## The Scheme to Defraud

25. The co-conspirators carried out their conspiracy and scheme to defraud through the following manner and means, among others.

26. On August 6, 2015, PERRY instructed Company 1's Assistant Director of Acquisitions, to "review and arrange for [GRANT and another EOA] either to come in on Friday or early next week and work until the end of the contract."

27. On August 16, 2015, GRANT provided PERRY the documents necessary for Company 1 to hire GRANT, including a W-9 listing GRANT's taxpayer information, an employment and non-disclosure agreement between GRANT and Company 1, a direct deposit agreement, and a personal summary information form. GRANT was subsequently hired by Company 1, and later by Company 2, when the OASCR contract transitioned from Company 1 to Company 2.

28. GRANT, with PERRY's assistance, falsified the number of hours he purportedly worked and/or the number of FADs he purportedly reviewed on weekly timesheets submitted to Company 1 and later, Company 2. GRANT also repeatedly submitted timesheets that exceeded

the maximum number of hours of approximately forty hours per week permitted for contract workers. For example—

    a. On October 2, 2016, GRANT submitted his weekly timesheet to Company 1, in which he falsely claimed to have worked sixty hours, including five hours each on Saturday and Sunday.

    b. On October 14, 2016, PERRY falsely confirmed that GRANT had worked ten hours on a federal holiday for a "special project," for which GRANT later was paid.

    c. On January 13, 2017, PERRY artificially inflated the hours on GRANT's time sheet, informing Company 1 that GRANT should have fifty hours for the current week instead of two hours, and forty hours for the previous week instead of sixteen hours.

    d. On February 7, 2018, PERRY approved GRANT to work more than forty hours a week due to a purported surge in cases.

29. Based on the contractors' timesheets, including GRANT's, Company 1 and Company 2 submitted monthly invoices to OASCR that identified the number of hours worked and/or the number of FADs reviewed by each contract employee.

30. On August 17, 2020, May 13, 2021, and May 4, 2022, and at numerous other times, PERRY approved the portions of the contracting companies' monthly invoices that pertained to work billed under the EAD portion of the OASCR contract, including work billed for GRANT, despite knowing that GRANT had falsified the hours of EEO-related work GRANT claimed to have performed.

31. On August 17, 2020, and at numerous other times, once each invoice was approved by PERRY, the invoice was submitted for final OASCR approval based in part on PERRY's attestation that work billed under the EAD portion of the OASCR contract had been completed.

32. Once each invoice was approved, payment to Company 1 and Company 2 was processed by the U.S. Treasury Invoice Processing Platform.

33. Company 1 and Company 2 then paid the contract employees, including GRANT, according to the hours they submitted on their timesheets and/or the number of FADs they reported as having reviewed, using money the contracting firms received from the government.

34. GRANT kicked back a portion of the money he was paid by Company 1 and Company 2 to PERRY in cash and using PayPal. From September 2015 through March 2020, GRANT transferred approximately $124,444 from a bank account in his name to a PayPal account under PERRY's control.

35. On September 1, 2016, PERRY provided feedback to Company 1 regarding GRANT's annual performance evaluation for the purposes of maintaining the illusion that GRANT was doing work. PERRY praised GRANT's productivity and stated he was "extremely pleased with the effort and work product," despite GRANT not having performed any substantive work for Company 1 and OASCR.

36. To conceal their criminal conduct, PERRY and GRANT exchanged emails containing phony work assignments to create the false impression that GRANT was actually performing EEO-related work or completing EAD-related projects when both GRANT and PERRY knew he was not.

**(Conspiracy to Commit Money, Property, and Honest Services Wire Fraud, in violation of Title 18, United States Code, Sections 1349, 1343, 1346)**

## COUNTS TWO THROUGH FIVE

### (Money, Property, and Honest Services Wire Fraud)

37. Paragraphs 1 through 36 are hereby incorporated and realleged.

38. Beginning at least in or about August 2015, and continuing until in or about November 2022, in the District of Columbia and elsewhere, defendants,

**KIRK PERRY and JAMAREA GRANT,**

devised and intended to devise and participated in a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and concealment of fact, and to deprive the public of the honest services of PERRY through bribes and kickbacks.

39. On or about the following dates, the defendants PERRY and GRANT transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice:

| COUNT | APPROXIMATE DATE OF WIRE COMMUNICATION | DESCRIPTION |
|---|---|---|
| 2 | August 17, 2020 | Email from PERRY in Ohio to OASCR employees in the District of Columbia, providing his signature of approval on the FADs portion of a Company 2 invoice |
| 3 | August 17, 2020 | Email from OASCR employee in the District of Columbia to OASCR employees in the District of Columbia and PERRY in Ohio, providing Company 2 invoice with PERRY's signature of approval |
| 4 | May 13, 2021 | Email from PERRY in Ohio to OASCR employees in the District of Columbia, providing his signature of approval on the FADs portion of a Company 2 invoice |
| 5 | May 4, 2022 | Email from PERRY in Ohio to OASCR employees in the District of Columbia, providing his signature of approval on the FADs portion of a Company 2 invoice |

9

**(Money, Property, and Honest Services Wire Fraud and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1343, 1346, 2)**

## FORFEITURE ALLEGATION

40. Upon conviction of any of the offenses alleged in Counts One through Five of this Indictment, the defendants PERRY and GRANT shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to 18 U.S.C. § 98l(a)(l)(C) and 28 U.S.C. § 246l(c). The United States will also seek a forfeiture money judgment equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

41. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendants shall forfeit to the United States any other property of the defendants, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(l)(C); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461(c))**

A TRUE BILL

_____
Foreperson
Date:

_____
MATTHEW M. GRAVES
United States Attorney
for the District of Columbia